Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendant,*
*Darrell T. Coker*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

MARCO SASSONE,

Plaintiff,

vs.

DARRELL T. COKER, *et al.*,

Defendants.

Case No.: 2:16-cv-03037-APG-PAL

**MOTION TO DISMISS PURSUANT TO FRCP 8, FRCP 12(b)(1) and (6), & FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)**

Defendant, Darrell T. Coker ("Coker"), hereby files this Motion to Dismiss Plaintiff Marco Sassone's ("Sassone" or "Plaintiff") lawsuit and his claims for deceptive trade practices, and violations of Nevada RICO, NRS 207.400(1)(1), 207.400(1)(c)(1), and/or (2) under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) and Fed. R. Civ. P. 8. A motion for judgment on the pleadings is also made pursuant to Fed. R. Civ. P. 12(c).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.0 Introduction and Background

Plaintiff initiated this case in Clark County as Case No. A-16-742853-C (the "State Court Action"). Before Mr. Coker was served, he removed to this Court under 28 U.S.C. § 1454 (ECF No. 1), because the claims are actually "copyright



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

in disguise" and thus present a federal question. For the same reason they present a federal question, they must be dismissed.

Sassone seeks protection for a copyright interest in paintings, which are the exact protections preempted by the Copyright Act, including additional rights covered under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A. Sassone has failed to replead his case to avoid preemption and further has not stated plausible claims recognized by law. Mr. Sassone's case should be dismissed under either Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8 or Fed. R. Civ. P. 12(c).

## 2.0 This Case Must Be Dismissed

### 2.1 Rule 12(b)(1): Subject Matter Jurisdiction

Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The existence of subject matter jurisdiction is an ongoing inquiry that a court must conduct *sua sponte* in order to continue the case. *Chapman*, 631 F.3d at 954; *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Where subject matter jurisdiction is absent, a court has no discretion and must dismiss the case. *Chapman*, 631 F.3d at 954.

A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm. *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v. Hays*, 515 U.S. 737, 742 (1995); *Chapman*, 631 F.3d at 954.

RANDAZZA | LEGAL GROUP

**2.1.1 Sassone Lacks Standing**

Only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement of that right. See 17 U.S.C. § 501(b). *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013) (upholding a 12(b)(1) dismissal when Righthaven held none of the beneficial rights to the Las Vegas Review Journal's intellectual property). Section 106 of the Copyright Act lists the "exclusive rights" that are necessary to maintain standing to sue. They include the right to reproduce the copyrighted work, to prepare derivative works based on the work, and to distribute copies of the work. *Id.* If Sassone fails to allege the legal or beneficial ownership of one of these rights, he lacks standing to sue. *Id*.

Sassone did lay out some creative, but insufficient, allegations. He alleged that the relevant works in this case are "copyrightable." (ECF No. 1-1 at ¶ 12). He has further alleged that he is "the sole owner of all right, title, and interest in and to the copyright in his works." (ECF No. 1-1 at ¶16). He then alleges that he has never assigned nor licensed his rights in the copyrightable works. (ECF No. 1-1 at ¶ 17). However, four paragraphs before that, he claims that the works were all the subject of a monograph book. (ECF No. 1-1 at ¶ 13).

If one reads quickly, one might be fooled by Sassone's sleight of hand – especially at ¶ 16, and further if one fails to check the copyright office's register. With respect to what Sassone actually pleads, he fails to plead that he has the exclusive right to publish, license, reproduce, distribute, or make derivative works. As in *Righthaven,* Sassone alleges certain rights, but not enough to establish standing. A review of the copyright office's registration records shows that he has no registration for these works. *See* U.S. Copyright Office search

results for "Sassone Marco", attached hereto as **Exhibit 1**.[1] Accordingly, even if he did allege such exclusive rights, Section 411(a)'s registration requirement is a pre-condition to filing a claim and he would lack standing to sue without either a registration or even an application for registration. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) (rejecting notion that a registration is a subject matter jurisdiction prerequisite); *see also Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 613 (9th Cir. 2010).

This is not mere intellectual property pedantry. As we all learned in first year property, property is a bundle of rights as defined by the state. These bundles of rights are not difficult to wrap the mind around when they deal with physical property. When it comes to *intellectual* property rights, it is less simple. The original "author" of a work is not always the "copyright holder" because a copyright is intangible property that can be bought, sold, divided, and ultimately the "creator" of the work may not be the author. Julie Cohen et al., Copyright in a Global Information Economy at 110 (2nd ed. Aspen 2006). Copyright in a work, "vests initially in the author or authors of the work." *Id.* However, the creator may not be the author if the creator sold the interest or created the piece as a "work made for hire." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 732, 109 S. Ct. 2166, 2168 (1989). For Sassone to sue to protect "his paintings" from being copied, he must allege that he has an exclusive right as a copyright holder. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). He has not done so.

---

[1] When considering a motion to dismiss, the Court may look to the public domain and the public record. *Lee v. City of L.A.*, 250 F.3d 668, 676 (9th Cir. 2001). The Court may look to the public record to see that Plaintiff Sassone does not own a copyright in any of these works and take judicial notice of this fact. *Id.* This Exhibit is only attached for the Court's convenience and is not intended to transform the Motion to Dismiss into a Motion for Summary Judgment, as it is a copy of a public record and not extrinsic evidence.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

Sassone has, however, claimed ownership of other works by filing for registration. *See* **Exhibit 1**. So why hasn't he registered any of the works at issue in this case? (Compare *id.* with ECF No. 1-1 at *Exhibit A*). Perhaps the works were works-for-hire, in which case they would belong to his employer. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 732 (1989). Alternatively, the rights may have been sold to someone else.

This would not stop Sassone from feeling an *emotional* attachment to the works, but that would not make them *his.* For example, Paul McCartney may feel a very emotional attachment to "Hey Jude," but at least as of today, he does not own the rights to that song. *See* Dan Rys, "A Brief History of the Ownership of the Beatles Catalog," BILLBOARD (Jan. 20, 2017).[2] Despite the fact that McCartney is a well-known animal rights activist, the current owner of the copyright has every right to license the use of the song to purveyors of bacon-wrapped veal and foie gras. McCartney, lacking ownership rights in the intellectual property would be in the same position as Mr. Sassone – lacking any standing to object.

It certainly pains artists to see their creations used for offensive purposes. Iggy Pop must have died inside when he heard "Lust for Life" used in a vacuous ad for Carnival Cruises. No song by The Smiths could be as sad as Johnny Marr must have been, each time he heard his signature guitar riff in "How Soon is Now" being used to hawk the Nissan Maxima. Similarly, Sassone is clearly a talented artist. Seeing his works sold as lithographs like so many copies of Dogs Playing Poker must cause him deep artistic distress, but it does not grant him exclusive rights that have either been lost, sold, or otherwise transferred.

[2] Available at: <http://www.billboard.com/articles/columns/rock/7662519/beatles-catalog-paul-mccartney-brief-history-ownership> (last accessed Mar. 1, 2017).

The copyright register shows none belonging to him. **Exhibit 1.** His claims must be dismissed for lack of standing.

**2.2 Even if Sassone had a protectable interest, dismissal is proper under FRCP 8, 12(b)(6), or 12(c) because the stated Claims are Preempted by the Copyright Act**

This Court should dismiss a suit under Fed. R. Civ. P. 12(b)(6) where the factual allegations fail to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007). The standard for deciding a 12(b)(6) motion and a 12(c) motion is "functionally identical." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011), citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (citations omitted).

Plaintiff alleges claims for RICO and deceptive trade practices but does not show a right to relief that is plausible and above mere speculation. First, the claims are pre-empted. Second, even if not pre-empted, the allegations elementally fail to state a claim upon which relief may be granted.

**2.2.1 Preemption**

Federal law preempts inconsistent state law. U.S. CONST. ART. VI, cl. 2. The Copyright Act expressly preempts state claims that assert rights and remedies that are exclusively governed by the Copyright Act. *See* 17 U.S.C. § 301. Federal courts have exclusive, "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a). Works that fall within the Copyright Act's subject matter are preempted. 17 U.S.C. § 301(a). Specifically, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright … are governed exclusively by this title …



RANDAZZA | LEGAL GROUP

[N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." *Id.*

Section 106 of the Copyright Act grants the holder of a copyright the exclusive right to reproduce the copyrighted work. 17 U.S.C. § 106. Section 101 brings "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions" under the purview of Title 17. 17 U.S.C. § 101. The Visual Artists Rights Act of 1990 ("VARA") grants artists three basic rights: the right to attribution, the right of integrity, and in some cases, the right to prevent destruction. 17 U.S.C. § 106A. These sets of rights are what Sassone seeks to protect – nothing more and nothing less.

**2.2.1.1 Preemption Test**

The Ninth Circuit has a two-part test for Copyright preemption: (1) whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C.S. §§ 102 and 103; (2) whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which lists the exclusive rights of copyright holders. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1135 (9th Cir. 2006), *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001). Plaintiff's claims fail to do so.

**2.2.1.2 Preemption Test – Part 1**

The first element looks to the subject matter of copyright: copyright protection subsists in original works of authorship fixed in any tangible medium which includes pictorial and graphic works of art. *Laws* 448 F.3d at 1139. Paintings are pictorial works of art. 17 U.S.C.S. § 102. "A work is fixed in a tangible medium of expression when its embodiment in a copy or phono record, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Laws* 448 F.3d at 1139.



RANDAZZA | LEGAL GROUP

Sassone's paintings are squarely within these definitions. Sassone himself has pled that his works are within the subject matter of copyright. *See* ECF No. 1-1 at ¶ 12. The subject matter clearly falls under the purview of copyright.

**2.2.1.3 Preemption Test – Part 2**

The second element of the Ninth Circuit test looks to whether the rights Plaintiff seeks to protect are enumerated in 17 U.S.C. § 106, which defines the exclusive rights of copyright holders. *Laws* 448 F.3d at 1143.

Three of the six exclusive rights apply here: (1) the right to reproduce the copyrighted work; (2) prepare derivative works based on the copyrighted work; and (3) distribute copies of the copyrighted work to the public. 17 U.S.C. § 106. In addition to the exclusive rights of a copyright owner, the author of the work (as opposed to assignees) have moral rights in the work. 17 U.S.C. § 106A.

"To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights." *Laws* 448 F.3d at 1143. "The state claim must have an extra element which changes the nature of the action." *Id.* (citations omitted). Ownership of material, and alleged misappropriation by defendants are, "part and parcel of the copyright claim." *Id.*, citing to *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973 (9th Cir. 1987) (internal citations omitted). The mere presence of an additional element is not enough, the additional element must transform the nature of the action to one not grounded in copyright. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006); *see also Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F. 3d 772,785-89 (5th Cir. 1999) (overturning a jury verdict in Plaintiff's favor on unfair competition by misappropriation claims due to federal copyright preemption).

The "extra element" does not exist here, because Sassone only alleges conduct and remedies addressed by Title 17: that Coker made and sold



RANDAZZA | LEGAL GROUP

unauthorized copies of Plaintiff's work. (ECF No. 1-1 at ¶¶ 19, 27). Plaintiff's complaint is about the use of copyrightable subject matter: Mr. Sassone is a painter and he claims that Defendants copied, reproduced, and distributed copies of paintings.[3] (ECF No. 1-1 at ¶¶ 10, 19, 27).

Plaintiff's claims are equivalent to claims under federal copyright laws. Sassone invokes rights that can only be afforded to a copyright holder: the right to make copies of paintings. (*See* ECF No. 1-1 at ¶¶ 12, 16.) Ownership in the intellectual property rights of paintings are protected by copyright and the rights Sassone seeks to enforce through his RICO and deceptive trade practices claims are part and parcel of copyright. The alleged wrongs are copying, distribution, and making of derivative works. (*See* ECF No. 1-1 at ¶¶ 18-22.)

Sassone's claims of rights are the equivalent to the exclusive rights of copyright holders, satisfying the second element of the Ninth Circuit test and are thus preempted.

#### 2.2.2 Preemption under The Visual Artists Rights Act § 301(f) of the Copyright Act (VARA)

To the extent that Sassone's complained-of conduct is outside of these traditional copyright claims, they land squarely on the turf of the Visual Artists Rights Act ("VARA"). VARA protects the rights of attribution and integrity in an artist's works. 17 U.S.C. § 106A.

VARA is a compromise law[4] that provides, "a limited and unique set of moral rights protections." Julie Cohen et al., Copyright in a Global Information Economy at 415 (2nd ed. Aspen 2006). VARA protects artists' rights in works of

[3] *See* 17 U.S.C. §106

[4] Congress adopted VARA two years after the U.S. acceded to the Berne Convention. JULIE COHEN et al., Copyright in a Global Information Economy at 415 (2nd ed. Aspen 2006). Moral rights, or *droit moral* are post-revolutionary French laws that aimed to protect the natural rights of artists as creators." *Id.* at 11.



RANDAZZA | LEGAL GROUP

visual art, defined as "a painting, drawing, print, or sculpture." *Cheffins v. Stewart*, No. 3:09-cv-00130-RAM, 2011 U.S. Dist. LEXIS 5947, at 9 (D. Nev. Jan. 20, 2011) (internal citation omitted). Sassone invokes rights for his paintings. (*See* ECF No. 12-2 at ¶¶ 12, 16). This "allows artists to protect their works against modifications and destructions that are prejudicial to their honors or reputations." *Pavia v. 1120 Ave. of the Ams. Assocs.*, 901 F. Supp. 620, 628 (S.D.N.Y. 1995); *see also Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979 (9th Cir. 2002). This is truly the song Sassone's complaint sings to us.

VARA gives artists exclusive rights to claim ownership of visual art work and prevent the use of the artist's name as the author of any work of visual art which he or she did not create. 17 U.S.C. §§ 106A(1)(a), 106A(1)(b). A state claim is preempted by VARA if (1) it provides legal or equitable rights that are equivalent to any of the rights provided by 106A; and (2) the state law rights apply to works of visual art. *See* 17 U.S.C. § 301(f). Section 301(f) to the governs when state laws are preempted.

Here, Plaintiff seeks to enforce legal or equitable rights that are equivalent to those in § 106A, and thus preempted.

In this case, Plaintiff invokes VARA rights, as follows:

- Plaintiff alleges that he "has been harmed in . . . reputation" and that "[t]he harm to Sassone and his reputation is irreparable . . ." (ECF No. 1-1 at ¶ 44.) In this context, these are VARA preempted rights.
- Plaintiff alleges that Defendants "imposed a forged signature of Sassone on the fraudulent Lithograph productions." (ECF No. 1-1 at ¶ 21.)
- Plaintiff alleges that Defendant's "offered for auction the fake Lithograph productions and advertised them as 'Original Signed Lithograph by Artist Marco Sassone' or 'Lithograph After Marc Sassone.'" (*Id*. at ¶ 26.)



RANDAZZA | LEGAL GROUP

- Plaintiff alleges that Defendants "provided a fraudulent, meaningless, self-produced certificate of authenticity with each sold bonus Lithograph." (*Id*. at ¶ 29.)
- Plaintiff alleges that "Defendants' acts of copying, imitating, fraudulently producing, forging, and selling the Works of Sassone have and will continue to increase the presumed availability of Sassone's Works, thereby significantly diluting the market value of his Works." (ECF No. 1-1 at ¶ 40.)

Each of these allegations is equivalent to rights protected under VARA, and are thus, expressly preempted.

### 2.3 Even absent pre-emption, the remaining claims are subject to dismissal

#### 2.3.1 Nevada Deceptive Trade Practices: Dismissal is Proper Because Plaintiff has Not Alleged the Necessary Elements and/or Has Not Specifically Alleged Fraud

Aside from preemption, the Plaintiff's claims fail as a matter of law. Nevada Deceptive Trade Practices are enumerated by statute in sixteen subparts. NRS 568.0915. Many of Plaintiff's allegations under the subheading "Deceptive Trade Practices" in the Amendment Complaint (ECF No. 1-1) are not causes of action under NRS 598.0915.

Plaintiff alleges that Defendants "knowingly forged Sassone's name on to the infringed fraudulent lithograph." (ECF No. 1-1). "Forgery" does not give rise to a cause of action under the Deceptive Trade Practices Act. Forgery refers to a specific crime. NRS 205.085. Here, Plaintiff uses forgery as a general verb as part of his Nevada Deceptive Trade Practices claim, yet forgery is not covered under the statute.

. . .

. . .



RANDAZZA | LEGAL GROUP

Fraudulent is also a legal term of art and carries the additional element of intent. NRS 42.001. In Nevada, one of the enumerated subparts of NRS 568.0915 is, "fraudulently alters any contract, written estimate of repair, written statement of charges or other document in connection with the sale or lease of goods or services." NRS 598.0915(14). This is the only enumerated act within NRS 598.0915 that has the element of fraud.

Fraud has a heightened pleading requirement. Under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud." *Cunningham-Dirks v. Nevada*, No. 2:12-CV-00590-PMP-VCF, 2013 U.S. Dist. LEXIS 901, at 28 (D. Nev. Jan. 2, 2013) (citations omitted). To state a claim for fraud, a plaintiff must allege, "(1) the defendants made a false representation, (2) the defendant knew or believed the representation to be false, (3) the defendant intended to induce plaintiff to rely on the misrepresentation, and (4) the plaintiff suffered damages as a result of his or her reliance on the misrepresentation." *Id*., citing to *Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 446, 956 P.2d 1382, 1386 (1998). Pleading fraud with particularity requires allegations regarding the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id*., citing to *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Again, Plaintiff uses the word "fraudulent" as an adjective rather than within its specific legal meaning, leaving Defendants to speculate as to what the possible allegations could be. Plaintiff has not alleged any of the elements of fraud. Further, Plaintiff has not alleged to be a victim of fraud, as Plaintiff has not alleged that Plaintiff relied on any of the alleged misrepresentations, as required by element three of a claim for fraud, above. Further, Plaintiff has not plead fraud with any level of specificity because Plaintiff merely alleges that the lithographs are fraudulent, and does not allege any facts regarding the



RANDAZZA | LEGAL GROUP

time and place of the activities, as required. Last, Plaintiff has not alleged that the Coker has altered a contract or a bill or sale or any of the other enumerated offenses covered under the statute. Neither has Plaintiff alleged that Coker had the requisite intent for fraud, yet Plaintiff uses the word fraud as an ordinary word plucked from a thesaurus without noting the legal significance of the word.

Plaintiff simply has not set forth the essential elements necessary to state a claim upon which relief can be granted, namely, that any legally cognizable "copyrighted" property has been infringed. Plaintiff's allegations are vague and must be dismissed for failure to state a claim.

#### 2.3.2 Nevada RICO NRS 207.400(1)(c)(1) and/or (2) and 207.400(1)(j): Dismissal is Proper Because Plaintiff Has Not Specifically Alleged the Necessary Elements of RICO

Preliminarily, Nevada Federal Courts require that RICO claims, "be pleaded with sufficient specificity because of the very serious consequences attached to the allegations of criminal conduct that are the essence of this kind of law suit. Not only is a civil RICO defendant accused of committing a criminal offense – which carries with it the potential for considerable social stigma – such a defendant is also confronted with the possibility of an adverse treble damages." *Hale v. Burkhardt*, 104 Nev. 632, 638, 764 P.2d 866, 869 (1988). "Presumably (although not specifically charged) the 'predicate crimes' upon which the RICO cause of action is based are violations of NRS 205.380, obtaining money, property or labor under false pretenses. A false pretense is a representation of some fact or circumstance which is not true and is calculated to mislead; it may consist of any words or actions intended to deceive." *Hale v. Burkhardt*, 104 Nev. 632, 636-37, 764 P.2d 866, 869 (1988); citing to *Buckner v. State*, 95 Nev. 117, 590 P.2d 628 (1979).



RANDAZZA | LEGAL GROUP

Sassone alleges several RICO claims. First, Section 207.400(1)(j) is a catch all that requires one, "to conspire to violate any of the provisions of this section." In Nevada, conspiracy requires an agreement between two or more persons to commit a crime. NRS 199.480.

Plaintiff alleges that Defendants conspired to create fake lithographs of "Sassone's Works" and then sold and auctioned the works through websites and auction houses they created. (ECF No. 1-1). However, there is no conspiracy here, because nearly every factual allegation about Defendants is directed at Mr. Coker. (ECF No. 12-2). Sassone voluntarily dismissed his claims against Defendant Richard Morello ("Morello"). The only allegations concerning Morello were that he created auction web sites, without any allegations that could establish liability. The only accusations against Defendants Darryl McCullough and And The Jello's Jigglin' LLC d/b/a Postal Annex are that they allegedly placed objects in a mail box. Plaintiffs have not properly pled that there is a conspiracy with the request specificity. As Plaintiff's claims appear only to be directed at Coker, there is no conspiracy.

The elements of §207.400(1)(c)(1) and/or (2) in Nevada are: One who is employed by or associated with any enterprise to conduct or participate in (1) the affairs of the enterprise through racketeering activity; or (2) racketeering activity through the affairs of the enterprise. Racketeering activity in Nevada requires that (1) the Defendant engaged in at least two of the enumerated crimes pursuant to NRS 207.360 and (2) that the Defendant had the requisite intent to commit those crimes pursuant to NRS 207.390. The Ninth Circuit has found that nominal parties are "unknown or fraudulently joined parties." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (emphasis added) (citations omitted). The remaining nominal parties do not create a conspiracy.



RANDAZZA | LEGAL GROUP

In Plaintiff's amended complaint, Plaintiff alleges that Defendant engaged in, "multiple transactions involving fraud or deceit in the course of an enterprise or occupation in violation of NRS § 205.377." (ECF No. 12-2 at 10). One of the enumerated crimes under NRS 207.360 is "any violation of NRS 205.377." Pursuant to NRS 205.377, a person shall not engage in multiple transactions involving fraud or deceit, which requires that the person act "knowingly and with the intent to defraud." In Nevada, as noted above, fraud must be plead with more specificity than an ordinary notice pleading under the federal rules of civil procedure. *Cunningham-Dirks v. Nevada*, No. 2:12-CV-00590-PMP-VCF, 2013 U.S. Dist. LEXIS 901, at 28 (D. Nev. Jan. 2, 2013).

However, again, Plaintiff's allegations do not meet the heightened pleading standard required for either RICO or fraud, as analyzed above. Plaintiff does not allege that Coker acted with the requisite intent to commit a crime because Sassone has not alleged that Coker knew Sassone had an ownership interest in any of these works. In fact, as analyzed above, the opposite is true, because if Coker searched the public records, he would have found no copyright. **Exhibit 1**. While a copyright registration might be sufficient to show constructive knowledge of a copyright claim, the absence thereof (and the lack of even the allegation of the affixation of a copyright notice) can not give rise to the inference that Coker knew, or should have known, that the works were either not public domain, or at the very least were Sassone's.

Plaintiff merely alleges that Defendants created fake lithographs of "Sassone's works." (ECF No. 12-2). Yet Plaintiff does not allege that Defendants acted with the *intent* to create anything that would subject Defendant to liability because there are no registered copyrights. In fact, many businesses



RANDAZZA | LEGAL GROUP

take advantage of the opportunity[5] to make money by printing works in the public domain.[6] In the absence of knowledge, there can be no RICO intent.

## 3.0 Conclusion

Based on the foregoing, Defendant Coker respectfully requests that this Court dismiss Plaintiff's claims for deceptive trade practices and RICO with prejudice. Plaintiff's claims are completely preempted and should be dismissed under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8, and Fed. R. Civ. P. 12(c) as a judgment on the pleadings.

Dated: March 2, 2017.

Respectfully submitted,

/s/ Marc J. Randazza

Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Defendant, Darrell T. Coker*

[5] Google launched a service that allows users to print custom books in the public domain, see <https://www.wired.com/2009/09/google-books-publish-on-demand/> (last visited February 28, 2017.)

[6] The public domain is a "foundational principle of the U.S. copyright system" and, at risk of oversimplification of a complex doctrine, it generally encompasses works that are not protected by copyright (usually through natural expiration of a copyright but sometimes by an artist's own volition to release their work into the public domain). See Julie Cohen et al., Copyright in a Global Information Economy 13 (2nd ed. Aspen 2006); see also JESSICA LITMAN, The Public Domain, 39 Emory L.J. 965, 966-68, 975-77 (1990) ("a crucial buttress to the copyright system; without the public domain, it might be impossible to tolerate copyright at all…")



RANDAZZA | LEGAL GROUP

Case No. 2:16-cv-03037-APG-PAL

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 2, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC

RANDAZZA | LEGAL GROUP